# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Brunswick Division

| | |
|---|---|
| In the matter of: ) | |
| ) | Adversary Proceeding |
| TOM TAN MINH VO ) | |
| (Chapter 7 Case Number 04-20334) ) | Number 04-02083 |
| ) | |
| *Debtor* ) | |
| ) | |
| ) | |
| FELICIA TURNER, ) | |
| United States Trustee, Region 21 ) | |
| ) | |
| *Plaintiff* ) | |
| ) | |
| v. ) | |
| ) | |
| TOM TAN MINH VO ) | |
| ) | |
| *Defendant* ) | |

FILED at 3 O'clock & 30 min P.M.
Date 3/24/05
United States Bankruptcy Court
Savannah, Georgia

## ORDER ON MOTION FOR SUMMARY JUDGMENT

Tom Tan Minh Vo ("Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on February 25, 2004. On June 1, 2004, Felicia S. Turner, United States Trustee, Region 21 ("Trustee") filed the current adversary complaint objecting to the discharge of Debtor. A pre-trial conference was held on November 12, 2004. On December 8, 2004, Trustee filed a Motion for Summary Judgment on which this Court now rules. This matter is a core proceeding within the jurisdiction of this Court under 28 U.S.C.



AO 72A
(Rev. 8/82)

§ 157(b)(2)(J).

## DISCUSSION

In his schedules, Debtor listed assets of $12,575.00 and liabilities of $176,200.00.[1] Voluntary Petition, Schedules B & F. All debts are listed as unsecured, nonpriority claims and are shown as being payable to numerous credit card companies. On Schedule I of his voluntary petition Debtor shows his occupation as self-employed and lists his current monthly income as $800.00. Further, he details monthly expenses of $886.00 on Schedule J.

Debtor was questioned about his financial dealings at the § 341 Meeting of Creditors held on April 1, 2004, and later in a deposition conducted on September 28, 2004. At the deposition Debtor stated that he obtained his many credit cards by filling out applications that he received in the mail, and that he would sometimes lie about his income in order to obtain a higher credit limit. After he received the credit cards, Debtor would take out cash advances of approximately $3,000.00 to $4,000.00. Once he exhausted his cash advance privileges on the cards, Debtor would travel to Atlanta in order to purchase gold jewelry which he would in turn sell to strangers at a loss in order to obtain cash. Although Debtor discussed the jewelry resales while being questioned at the § 341 Meeting of

---

[1] Debtor's original petition filed on February 25, 2004, showed unsecured claims totaling $159,842.00. Voluntary Petition, Schedule F. On April 29, 2004, Debtor amended his schedules to include an additional unsecured claim of $16,358.00 payable to Household Bank.

Creditors, he did not report them in paragraph 10 (Other Transfers) of his Statement of Financial Affairs or anywhere else in his bankruptcy filings.

The proceeds obtained from the cash advances and jewelry resales were allegedly lost gambling at various casinos. In total, Debtor estimates that he lost $160,000.00 to $170,000.00 gambling. However, Debtor was unable to detail his gambling losses with any specificity. Thus, Trustee requested that Debtor produce tax returns for 2002 and 2003, two years of bank statements, and two years of credit card statements. While Debtor provided the requested tax returns and bank statements, he was unable to furnish all credit card statements. Specifically, Debtor provided credit card statements for twenty-one different credit card accounts. Affidavit of B. Amon James, ¶ 6 (Nov. 29, 2004). However, Debtor furnished only one or two statements for sixteen of the accounts, and no more than six statements were provided for any of the accounts. Id. In summarizing the credit card statements, Trustee was able to detail only $4,005.35 of credit card expenses that could be directly attributed to gambling. Statement of Facts in Support of Motion for Summary Judgment, p. 5-6 (Dec. 8, 2004). The credit card statements produced revealed that Debtor expended $48,600.00 on jewelry purchases. Id. at p. 8. Debtor also provided his players card[2] information from four casinos.

---

[2]Casinos commonly issue a players card to patrons to track a gambler's presence at the casino and/or the type, duration, and dollar amount of gambling activity. Affidavit of Anthony Del Vescovo, ¶ 4 (Dec. 1, 2004).

AO 72A
(Rev. 8/82)

Based upon the information that Debtor provided, Trustee requested Debtor's gambling records from the Grand Casino in Biloxi and the Emerald Princess cruise ship in Brunswick where Debtor supposedly did the majority of his gambling. The records from the Grand Casino in Biloxi indicate that Debtor played at the casino for a total of fifty hours and twenty-four minutes. Affidavit of Anthony Del Vescovo, ¶ 14 (Dec. 1, 2004). Further, he was shown as winning an estimated $1,803.00. Id. The records received from the Emerald Princess indicate that from September 2003 to May 2004, someone boarded the ship by displaying Debtor's players card thirty-three times.[3] Affidavit of Catherine Jackson, ¶ 7 (Dec. 1, 2004). Beginning June 2004, the Emerald Princess has required that boarding passengers display valid photo identification. Since that time, Debtor has boarded the Emerald Princess fourteen times. Id. at ¶ 8. While the Emerald Princess does not keep a record of a player's winnings or losses, Catherine Jackson, Director of Operations of Golden Isles Cruise Line, Inc., noted in her affidavit that, "it is extremely unlikely that any individual has lost $100,000 or more gambling on the Emerald Princess." Id. at ¶10.

In addition to gambling, Debtor revealed at the § 341 Meeting of Creditors that he spent some of the proceeds of the cash advances and jewelry resales on gifts to friends. For example, on October 27, 2003, Debtor charged $2,808.98 to his credit card for

---

[3]Prior to June 2004, at time of boarding VIP passengers only needed to announce their players card number; no other identification was required. Further, the Emerald Princess only kept track of the players cards. New United States Coastguard/Homeland Security requirements went into effect July 1, 2004, that required all passengers to present government issued photo-identification at the time of boarding.

4

a 54 inch television which he gave to a friend. In addition, Debtor charged $101.56 for a pair of Nike tennis shoes that he gave to a friend whose last name he did not know. Debtor did not report either gift on his Statement of Financial Affairs when he filed his petition.

In the Motion for Summary Judgment, Trustee argues that there is no genuine issue of material fact, and that Debtor should be denied a discharge. Trustee first maintains that Debtor should be denied a discharge pursuant to 11 U.S.C. § 727(a)(3) because he failed to maintain and preserve adequate records. While Defendant has demonstrated that he is a frequent gambler, Trustee argues that Debtor has not accounted for losing over $160,000.00. Trustee finds it important that Debtor did not report either his gambling winnings or losses on his federal income tax return.

Trustee also argues that Debtor should be denied a discharge under § 727(a)(5) because he failed to satisfactorily explain his lack of assets. While Debtor contends that he lost most of the money gambling, Trustee believes that Debtor's statements are so vague and inconsistent as to render his explanation meaningless. For example, when Debtor originally filed his petition he listed gambling losses of $100,000.00. Statement of Financial Affairs, ¶ 8. However, at the April 1, 2004, § 341 Meeting of Creditors, Debtor claimed that his $160,000.00 in credit card debt was mainly due to his gambling losses which he incurred over the course of a year. Section 341 Transcript, p. 10-11 (April 1, 2004). Finally,

AO 72A (Rev. 8/82)

at the September 28, 2004, deposition, Debtor stated that his gambling losses started as far back as 2000 and that he really does not know how much that he lost, only that he lost "everything." Deposition of Tom Tan Minh Vo, p. 64-65 (Sept. 28, 2004).

Trustee also contends that Debtor should be denied a discharge under § 727(a)(4)(A) because Debtor made a false oath in connection with his case. Specifically, Debtor's material omissions in his Schedule of Financial Affairs constitute reckless indifference to the truth. Finally, Trustee believes that Debtor should be denied a discharge because in reselling the jewelry at a substantial loss and giving expensive gifts he fraudulently transferred property with the intent to defraud creditors in violation of § 727(a)(2)(A).

In response, Debtor argues that Trustee's evidence is not sufficient to sustain a Motion for Summary Judgment. First, Debtor contends that the records he has maintained are not inadequate or unusual for a Vietnamese gambler who does not speak English very well. Debtor explained that in failing to schedule the transfers of the jewelry and gifts he had no intent to defraud anyone. In fact, Debtor believes that the jewelry resales were made in the ordinary course of business such that he was not required to report them as Other Transfers in his Statement of Financial Affairs. Further, he believes that until this Court hears him testify in person, when it can judge his credibility and sincerity, it would be very

6

difficult to conclude that his explanations are unsatisfactory as a matter of law.

## CONCLUSION

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56, made applicable to bankruptcy practice pursuant to Federal Rule of Bankruptcy Procedure 7056, governs a summary judgment motion. Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties indicate that there is no genuine issue of material fact and show that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In analyzing a motion for summary judgment, the Court must view all the evidence and factual inferences drawn therefrom in a light most favorable to the nonmoving party. *See* Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing no such issues exist. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). However, Rule 56(e) provides that:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

AO 72A
(Rev. 8/82)

Thus, once the moving party has met its burden, the burden then shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial. *See* Allen 121 F.3d at 646.

*Absence of Records*

Section 727(a) of the Bankruptcy Code provides that the court shall grant the debtor a discharge, unless:

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

The purpose of Section 727(a)(3) is to give creditors and the bankruptcy court complete and accurate information concerning the status of a debtor's affairs. Meridian Bank v. Alten, 958 F.2d 1226, 1230 (3rd Cir. 1992) (*citing* 4 Collier on Bankruptcy ¶ 727.-03[1] (15th ed. 1979)). A plaintiff objecting to discharge pursuant to this provision must show that the debtor failed to maintain adequate records and that this failure makes it impossible to evaluate the debtor's financial condition. *See* Lansdowne v. Cox (In re Cox), 41 F.3d 1294, 1296 (9th Cir. 1994) (holding that debtor's reliance on her husband to keep or preserve books or records was "objectively reasonable" under totality of circumstances). Whether or not a

8

debtor intends to defraud his creditors by failing to maintain records is irrelevant to making a § 727(a)(3) objection to discharge determination. *See* Bancflorida v. Depasquale, No. 93 C 4488, 1993 WL 410152, at *3 (N.D. Ill. Oct. 14, 1993); Tillery v. Hughes (In re Hughes), 184 B.R. 902, 908 (Bankr. E.D. La. 1995); Miller v. Pulos (In re Pulos), 168 B.R. 682, 689 (Bankr. D. Minn. 1994). Finally, when a plaintiff raises the inference that a debtor failed to maintain appropriate records, by asserting that the debtor failed to produce records in the course of discovery, and the debtor fails to rebut this presumption with the production of documents, summary judgment may properly be granted. Helms v. Gangemi (In re Gangemi), 291 B.R. 242, 246 (E.D. N.Y. 2003) (denying debtor discharge based upon failure to produce financial records).

Reasonableness under all the circumstances is the standard for assessing a debtor's financial records under the discharge exception of § 727(a)(3); the education and sophistication of the debtor is a relevant factor that the court should consider. *See* Razzaboni v. Schifano (In re Schifano), 378 F.3d 60, 68-70 (1st Cir. 2004); Meridian Bank, 958 F.2d at 1230. While sparse, the records that Debtor has produced do evidence $48,600.00 in jewelry purchases which supports his contention that he purchased jewelry, later sold at a loss, in order to fund his gambling habits. Therefore, construing the record for purposes of Trustee's Motion for Summary Judgment, it is not clear as a matter of law that Debtor has maintained insufficient records or that his failure to maintain more substantial records is

9

unreasonable.

However, at trial Debtor must provide this Court and Trustee with more than his unsubstantiated testimony that he lost money gambling in order to obtain a discharge. *See* Wazeter v. Michigan National Bank (In re Wazeter), 209 B.R. 222, 228 (W.D. Mich. 1997) (denying discharge for debtor who failed to produce, among other documents, credit card bills and checking account statements); U.S. v. Craig (In re Craig), 252 B.R. 822, 828 (Bankr. S.D. Fla.2000) (denying discharge when debtor failed to produce any credit card statements). It is not the duty of the trustee or creditors to play detective and ferret out the documents of a debtor to reconstruct financial records. Govaert v. S. Nat'l Bank of N.C. (In re Caserta), 182 B.R. 599, 611 (Bankr. S.D. Fla. 1995). Further, one court has recognized that:

> Gambling is an activity for which records are seldom kept. It is therefore a good way for a debtor to try to explain the disappearance of funds which may be secreted elsewhere. For this reason, where a debtor's explanation for the loss of substantial assets is that he lost them gambling, a discharge has often been denied.
>
> Graves & Rodgers, Inc. v. Gudowitz (In re Gudowitz), Nos. 84-30372, 84-7114, 1986 WL 28906, at *10 (Bankr. S.D.N.Y. July 8, 1986).

As Trustee noted, the only adequate records of Debtor's gambling are those that Trustee acquired from the casinos. Those records fail to demonstrate that Debtor lost $160,000.00.

AO 72A
(Rev. 8/82)

Nevertheless, I am only ruling on Trustee's Motion for Summary Judgment and I am mindful of the principal that the grounds for discharge are construed liberally in favor of the debtor. See Groman v. Watman (In re Watman), 301 F.3d 3, 7 (1st Cir. 2002) (citing Commerce Bank & Trust Co. v. Burgess (In re Burgess), 955 F.2d 134, 137 (1st Cir.1992)). Accordingly, Trustee's Motion for Summary Judgment based on § 727(a)(3) is denied.

*Failure to Explain Loss of Assets*

Section 727(a) provides that the court shall grant the debtor a discharge, unless:

> (5) the debtor has failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities[.]

Under § 727(a)(5), the creditor must first show that assets have been lost. Then, to receive a discharge, the debtor must "convince the judge" that he was not hiding any assets. Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 619 (11th Cir. 1984). The proof provided to the judge requires more than undocumented, unsupported vague generalities in explaining the loss of assets. See Shaheen v. MacPherson (In re MacPherson), 101 B.R. 324, 326 (M.D. Fla.1989).

Here, Trustee has shown that Debtor no longer has over $160,000.00 in cash

and jewelry that he obtained using credit cards. Debtor's only explanation is that he lost everything gambling. Further, the fact that Debtor paid $2,808.98 for a 54 inch television and $101.56 for a pair of Nike tennis shoes which he then gave to friends creates some inference that he may have concealed or transferred assets. However, as discussed, the credit cards that Debtor provided evidence substantial jewelry purchases, and the issue of whether Debtor has satisfactorily explained his loss of that jewelry, and other assets, is ultimately a question of fact which requires that I assess the credibility of Debtor's proffered explanation. Chalik, 748 F.2d at 619; Napolitano v. McNamara (In re McNamara), 310 B.R. 664, 667 (Bankr. D. Conn. 2004) ("The test under [§ 727(a)(5)] relates to the credibility of the proffered explanation, not the propriety of the disposition".). Accordingly, summary judgment on this ground is not appropriate.

*Fraudulent Transfer & False Oath*

Section 727(a) further provides that the court shall grant the debtor a discharge, unless:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
>
> (A) property of the debtor, within one year before the date of the filing of the petition . . .

AO 72A
(Rev. 8/82)

>(4) the debtor knowingly and fraudulently, in or in connection with the case–
>
>(A) made a false oath or account[.]

Thus, to prevail under § 727(a)(2) Trustee must show that Debtor acted with the specific intent to defraud creditors. To prevail under § 727(a)(4)(A) Trustee must establish that: 1) Debtor made a statement under oath; 2) such statement was false; 3) Debtor knew the statement was false; 4) Debtor made the statement with fraudulent intent or reckless disregard for the truth; and 5) the statement related materially to the bankruptcy case. *See* Keeney v. Smith (In re Keeney), 227 F.3d 679, 685 (6th Cir. 2000) (citing Beaubouef v. Beaubouef (In re Beaubouef ), 966 F.2d 174, 178 (5th Cir. 1992)). In short, both §§ 727(a)(2) & (4) require that I assess the intent of Debtor. Here, the existing record supports disparate views on whether or not Debtor acted with the fraudulent intent necessary to support a denial of discharge. Further, intent is normally a question of fact and often not susceptible to summary judgment. *See* In re Kontrick, 295 F.3d 724, 737 (7th Cir. 2002). Accordingly, I hold that making any such determination regarding intent will require evidentiary development at trial such that Trustee's Motion for Summary Judgment with regards to §§ 727(a)(2) & (4) is denied.

## ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that the

AO 72A (Rev. 8/82)

United States Trustee's Motion for Summary Judgment is DENIED. The case will be set for trial by separate Order.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 23rd day of March, 2005.

C: ~~Debtor~~
~~Debtor Atty~~
Plaintiff James
Pltf. Atty
Def. Atty Orange
Trustee Souther
~~U.S. Trustee~~ 3/24/05
CC